# UNITED STATES DISTRICT COURT

### for the

### Eastern District of California

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  2:23-mj-0130 AC |
| | ) | |
| TIO SESSOMS | ) | |
| | ) | |
| | ) | |
| _Defendant(s)_ | | |

**FILED**

**Sep 14, 2023**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**SEALED**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ August 28, 2023 _____ in the county of _____ Sacramento _____ in the _____ Eastern _____ District of _____ California _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| **21 U.S.C. § 841(a)(1)** | **Distribution of a Controlled Substance** |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

_____
/s/ Aaron Parker
_Complainant's signature_

Aaron Parker, Postal Inspector,
U.S. Postal Inspection Service
_Printed name and title_

Sworn to me and signed via telephone.

Date:  September 14, 2023

_____
_Judge's signature_

City and state:  Sacramento, California

Allison Claire, U.S. Magistrate Judge
_Printed name and title_

1   PHILLIP A. TALBERT
    United States Attorney
2   ALEXIS KLEIN
    Assistant United States Attorney
3   501 I Street, Suite 10-100
    Sacramento, CA 95814
4   Telephone:  (916) 554-2700
    Facsimile:  (916) 554-2900
5
6   Attorneys for Plaintiff
    United States of America
7

8                IN THE UNITED STATES DISTRICT COURT

9                EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,              CASE NO.

12                      Plaintiff,

13             v.                          AFFIDAVIT IN SUPPORT OF CRIMINAL
                                           COMPLAINT
14  TIO SESSOMS,
                                           **UNDER SEAL**
15                      Defendant.

16

17        I, Aaron Parker, being first duly sworn, hereby depose and state as follows:

18        **I.    INTRODUCTION AND SUMMARY OF CHARGES**

19        1.      This Affidavit is made to support a Criminal Complaint and Arrest Warrant charging Tio

20  SESSOMS with distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1), on or about August 28,

21  2023.

22        2.      As discussed in further detail below, SESSOMS operates a consulting firm in downtown

23  Sacramento and also works for at least one other local entity in Sacramento.  In July and August of this

24  year, SESSOMS mailed fentanyl and sold fentanyl to law enforcement in the Eastern District of

25  California.  During law enforcement's investigation of SESSOMS' drug trafficking activities, it was

26  discovered that SESSOMS was using his workplaces as return addresses on packages he mailed to

27  addresses in Pennsylvania containing drugs.

28  ///

    AFFIDAVIT

## II.     AGENT BACKGROUND

3.     I am a Postal Inspector with the USPIS, currently assigned to the Sacramento, California field office.  I investigate criminal violations of federal and state law, including illegal narcotics, firearms, and illicit proceeds being sent through the U.S. Mail; money laundering; robbery and burglary of postal employees and facilities; destruction of government property; theft/possession of stolen U.S. Mail; mail and bank fraud; and identity theft crimes.  I am a "Federal law enforcement officer" within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure; that is, a federal law enforcement agent engaged in enforcing criminal laws and authorized to request a search warrant.

4.     I started my career in law enforcement after attending a 16-week Basic Law Enforcement Training in New Bern, North Carolina, and graduated in December of 2019.  I became a sworn police officer for the city of Havelock, NC in April 2020.  In 2022, I completed 17 weeks of training at the USPIS Career Development Unit in Potomac, Maryland.  I have received training that includes, but is not limited to, the investigation of theft, drug trafficking, burglaries, robberies, money laundering, and identity theft crimes.  Through my training, experience, and interaction with other experienced Postal Inspectors, Task Force Officers, and other drug trafficking investigators, I have become familiar with the methods employed by drug traffickers to, among other things, use the mail to conduct their illegal operations.

5.     During my training, experience, and interaction with other experienced Postal Inspectors, Task Force Officers, and other drug-trafficking investigators, I am familiar with the methods employed by drug and firearm traffickers to smuggle, safeguard, store, transport, and distribute drugs and firearms; to collect and conceal drug and firearm-related proceeds; and to communicate with other participants to accomplish such objectives.  I have received specialized training and instruction in narcotics investigation matters including drug interdiction, drug detection, money laundering techniques and schemes, and drug identification.  I have participated in and led numerous investigations targeting individuals and organizations trafficking firearms, marijuana, methamphetamine, heroin, cocaine, LSD, steroids, and many other controlled substances, along with the related unlawfully gained proceeds.  I have investigated many drug and firearm traffickers and money launderers who utilize the dark web, encrypted message applications, cryptocurrencies, and various other concealing platforms in furtherance of their criminal

enterprise.  Through these investigations, I am familiar with the way drug and firearm traffickers conduct their illegal operations.

6.      The facts in this affidavit come from my personal observations, my training and experience, and information and reports obtained from other agents and witnesses.  Since this Affidavit is being submitted for the limited purpose of demonstrating probable cause for the issuance of a criminal complaint and accompanying arrest warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause that Tio SESSOMS distributed a controlled substance, in violation of 21 U.S.C. § 841(a)(1).

### III.      PROBABLE CAUSE

#### A.      Background of Investigation and Identification of SESSOMS

7.      During the course of a drug-trafficking related investigation in the Western District of Pennsylvania (WDPA), SESSOMS, using phone number (279) 220-9480 (Target Cell Phone 1) was identified as a source of supply of drugs to one or more subjects of the WDPA's investigation.  One of the ways that law enforcement identified SESSOMS as a drug supplier was based upon recorded phone calls he placed to an inmate incarcerated in Pennsylvania on pending drug charges.  After listening to the calls, law enforcement suspected the two were discussing drug trafficking.

8.      Since November 2022, SESSOMS, using Target Cell Phone 1, has exchanged text messages with a Confidential Informant (CI).[1]  Among these texts, SESSOMS offered to sell the CI drugs and ship those drugs through the U.S. mail to the CI.  Some of the text messages SESSOMS exchanged with the CI included information about various drugs, including "Coke?", pills, methamphetamine, and fentanyl.  In the messages, SESSOMS indicated through coded language that there were certain drugs that he was unwilling to send through the mail, referring to one of these drugs as

---

[1] According to law enforcement, the CI has interacted directly with investigators involved in this investigation in the WDPA.  The CI is currently motivated by the possibility of receiving leniency for pending criminal charges. The CI has been interviewed by law enforcement. A portion of the interviews were in-person, and the interviewing personnel were fully aware of CI's identity, and the CI did not attempt to obscure their identity in any manner. The requirement that the CI provide only truthful information was stressed to the CI at the beginning of their cooperation.  To date, no information received from the CI is believed to be dishonest, deceitful, or unreliable in this investigation.  Additionally, investigators have independently corroborated much of the information provided by the CI relative to the investigation.  In addition, the CI has participated in controlled purchase operations in the past, which resulted in the seizure of known quantities of suspected controlled substances.  Thus, law enforcement believes the CI is a reliable in providing information in this investigation.

AFFIDAVIT

1  "dog food."

2      9.    As detailed further below, SESSOMS used a variety of methods that I believe were

3  designed to attempt to avoid law enforcement detection and/or conceal his ongoing drug trafficking

4  activities.  This belief is based upon my background, training, experience, conversations with other law

5  enforcement, and personal knowledge of this investigation.

6      10.    One of the concealment methods used by SESSOMS was to refer to himself in the third

7  person, by a different name, when discussing potential drug deals.  For example, in text messages in

8  November 2022 with the CI, SESSOMS texted: "They call me Jack."

9      11.    SESSOMS was further identified as the user of Target Cell Phone 1 based on GPS Ping

10  location data, overlayed with drug mailings captured on post office surveillance video, law enforcement

11  surveillance, and text messages that SESSOMS sent providing detailed information about drug mailings

12  using Target Cell Phone 1, in addition to the other investigation outlined below.

13      12.    In 1999, SESSOMS was convicted of First Degree Murder, First Degree Robbery, and

14  First Degree Burglary in Sacramento County Superior Court.  This conviction was vacated in 2015, and

15  in 2017, SESSOMS pled guilty to two felonies after charges were re-filed: Voluntary Manslaughter and

16  First Degree Burglary.  In 2020, SESSOMS was arrested, cited, or detained for a parole violation.

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  //

25  ///

26  ///

27  ///

28  ///

AFFIDAVIT

13.    According to his publicly accessible LinkedIn page, SESSOMS holds himself out in the Sacramento Community as a "mentor" and "consultant."  The "About" section provides a description of his purported work and mission:



a)    SESSOMS' LinkedIn page also describes him as the "Co Founder/Creative Director" of Empowering Pops, whose mission is to empower fathers "to build a broader vision for themselves and their children. Giving them resources, examples, and abilities to succeed as Dads," from 2019-2022, and currently the "Owner" of "T.RIND Consulting LLC" and an Employment Specialist with the Exodus Project.[2]

i)    T.RIND Consulting LLC ("SESSOMS' Office") is located at 901 H Street, Suite 400, in downtown Sacramento.

ii)    The Exodus Project ("SESSOMS' Office 2) is located at 2324 L Street, in Sacramento.

---

[2] According to its website, the Exodus Project is a re-entry program for convicted felons.

AFFIDAVIT

b)      Based on my background, training, experience, conversations with other law enforcement, and knowledge of this investigation, I believe SESSOMS has attempted to use his employment, community involvement, and other forms of media, as a tool to avoid law enforcement detection and conceal his drug trafficking activity.

c)      Although SESSOMS appears to be using his workplaces to further or conceal his drug trafficking activities, the investigation to date has not revealed any evidence that members of the Exodus Project are in any way involved in or have any knowledge of his illegal activities.

**B.      SESSOMS Uses his Office on H Street in Downtown Sacramento to Facilitate his Drug Trafficking Activities**

14.      On March 30, 2023, USPIS interdicted a parcel mailed by SESSOMS from the Eastern District of California to the WDPA.  The return address for the parcel was listed as "Ken Rosenfeld, 901 H Street, Ste 400, Sacramento, CA 95814" – the same address as SESSOMS' Office.

15.      In March of 2023, SESSOMS used Target Cell Phone 1 to communicate with the CI and negotiate the sale, and mailing, of drugs to Pennsylvania.  SESSOMS sent a photograph of the parcel, which had a handwritten USPS shipping label.  It was mailed from the Eastern District of California, subsequently interdicted, and searched pursuant to a warrant obtained in the WDPA.  The parcel contained approximately 150 grams of suspected methamphetamine.  These drugs were field-tested using a TruNarc analyzer, which yielded a positive result for methamphetamine.  The parcel is pictured below:



AFFIDAVIT

16.     Then, on August 31, 2023, SESSOMS directed a law enforcement undercover agent (UCA) to mail him $2,500 related to another negotiated drug deal, this time using (916) 215-9713 (Target Cell Phone 2), a phone number SESSOMS provided to the UCA.  SESSOMS directed the UCA to send the money to SESSOMS' Office – he specifically provided the address: 901 H Street, 400B, Sacramento, CA 95814, and the name "Thio Susuions."

C.     **SESSOMS Uses His Office on L Street in Sacramento as the Return Address on a Package SESSOMS Mails Containing Fentanyl**

17.     In July 2023, SESSOMS, using Target Cell Phone 1, exchanged messages with the CI. During those conversations, SESSOMS agreed to ship 3 ounces of fentanyl for the CI to sell,[3] indicating he had "3 zips ready to go … ."

18.     Based on my background, training, experience, and conversations with other law enforcement, I am aware that a "zip" is a term commonly used by drug traffickers when referring to one ounce of drugs.  In this instance, I believe "3 zips" refers to three ounces of drugs.

19.     The CI subsequently sent SESSOMS an address in Pennsylvania to mail the drugs to.

20.     On July 17, 2023, law enforcement agents conducted surveillance of SESSOMS at an address associated with him based upon the location of overnight GPS data associated with Target Cell Phone 1 and surveillance: 9689 Oak Reserve Lane, Elk Grove CA, 95758 ("SESSOMS' Residence"). SESSOMS' Vehicle – a dark grey 2019 Toyota Camry bearing California license plate 8HTG535[4] – was seen parked in the driveway.  Agents waited in the vicinity of the residence and observed SESSOMS driving his car, out of the gated neighborhood where the Oak Reserve Lane home is located.

21.     Agents lost sight of SESSOMS for approximately one minute in the vicinity of the N St. exit on highway 99-N but re-acquired a visual of SESSOMS' vehicle parked in front USPS Fort Sutter Post Office Location, at 1618 Alhambra Blvd, Sacramento, CA 95816.  Another agent entered the parking lot of the Fort Sutter Post Office and maintained a clear view of SESSOMS' Vehicle, while USPIS Inspector Mahoney proceeded to the rear entrance of the post office in order to conduct a review

---

[3] Based on my background, training, experience, and conversations with other law enforcement, this practice is often referred to as "fronting" and something that is done by narcotics traffickers and/or sources of supply of drugs where drugs are supplied by the source to the dealer on credit with the expectation that the debt will be paid after the drugs are sold by the distributor.

[4] This car is registered in SESSOMS and his wife's names, at another address in Sacramento.

AFFIDAVIT

of the security footage.  Law enforcement observed SESSOMS exiting the Fort Sutter Post Office

wearing a White Sox hat, a blue stripped collared shirt, blue Nike shoes and a white undershirt.

SESSOMS' description was then relayed to Inspector Mahoney.  While conducting a review of the video,

Inspector Mahoney was able to confirm the physical description provided by agents and observed

SESSOMS enter the post office, mail a parcel ("the Parcel"), then return to his vehicle.  After a review

and download of the post office surveillance video, Inspector Mahoney took custody of the Parcel mailed

by SESSOMS.[5]

      22.    After he mailed the Parcel, SESSOMS texted a photo of the USPS receipt, which

corresponded to the Parcel, to the CI.  The receipt included a tracking number for a parcel, its expected

arrival date, and date/time and location of where the parcel was sent from, and in the photo, the tracking

number was circled.

      23.    Law enforcement then observed SESSOMS travel to SESSOMS' Office 2, located at the

Legacy Center, 2324 L Street Sacramento, CA 95816–the same address as the return address on the

Parcel–using surveillance and GPS Ping location data.[6]

      24.    Law enforcement has associated this address with SESSOMS during this ongoing

investigation, including through surveillance.  Also, according to the publicly accessible, online database

LinkedIn, SESSOMS' page lists him as an Employment Specialist working with Exodus Project.

      25.    Around 1:36 p.m. on July 17, law enforcement observed SESSOMS exiting the front door

of the Legacy Center.  I placed a call to Target Cell Phone 1 and observed SESSOMS reach into his

pocket at approximately the same time of the placed call, remove his phone, and look at the screen.  He

then sat in his vehicle, and I hung up the phone.  Approximately 30 minutes later, SESSOMS returned the

missed call utilizing Target Cell Phone 1, which law enforcement did not answer, then immediately sent

a text message asking: "Who this".  In this way, I was able to separately confirm that SESSOMS is the

---

[5] Additionally, based on my knowledge of the ongoing investigation, as well as the anomalies and characteristics of this parcel, I requested Postal Inspector Patrick Mahoney intercept the Parcel for further investigation.

[6] The Exodus Project is located at this address, where SESSOMS' Office 2 is located.  According to employment records retrieved from the Employment Development Department, SESSOMS was employed there from January 2023 to March 2023.  A google search lists the project's address as 2324 L Street, Suite 308.  I understand the Exodus Project, and SESSOMS' Office 2 is located on the second floor of 2324 L Street, and includes four offices inside its location, numbered as 304, 310, 311, and 312, as further detailed in the search warrants submitted as part of this investigation.

AFFIDAVIT

user of Target Cell Phone 1, the phone number that has been communicating with the CI about drugs, as detailed above.

26.     Also on July 17, 2023, I conducted a review of USPS business records and observed that the Parcel (USPS Priority Mail Express parcel bearing tracking # EI 315 991 835 US) was mailed from the Fort Sutter post office located in Sacramento, California, destined to the recipient's name and address "Amanda Sumter-Scotts 307 Allen Street, Pittsburg, PA 15210", with the sender name and address as "Jarvis Sumter 2324 L Street, Sacramento, CA 95816."  The recipient address is the one the CI provided to SESSOMS, and the Parcel tracking number matched the tracking number SESSOMS provided to the CI via Target Cell Phone 1.

27.     On July 28, 2023, law enforcement obtained a search warrant for the Parcel mailed by SESSOMS to the WDPA.

28.     The same day, I executed the search of the Parcel pursuant to the search warrant.  The Parcel contained a powder, which appeared consistent with fentanyl, packaged in three separate clear baggies, totaling 77 grams.  I field tested the substance using a Premier Biotech testing kit, and it tested positive for fentanyl.  Below is a picture of the parcel:



**D.      SESSOMS Sells Law Enforcement Over 500 Grams of Fentanyl**

29.     In August 2023, SESSOMS began communicating with a law enforcement undercover

1    agent (UCA) using Target Cell Phone 1.  SESSOMS was introduced to the UCA through the CI.

2        30.    Using Target Cell Phone 1, SESSOMS negotiated the sale of a kilogram of fentanyl for

3    $47,000 to the UCA.  They arranged for the purchase of one-half of this kilogram for $23,000 to occur on

4    August 28, 2023.  During their conversations via Target Cell Phone 1, SESSOMS directed the UCA to

5    book a hotel room in the downtown Sacramento area, and closer to August 28, SESSOMS would provide

6    the time and location for the fentanyl sale.

7        31.    On August 25, 2023, SESSOMS sent text messages from Target Cell Phone 1 to the UCA

8    regarding their upcoming, August 28 drug transaction.  Below is an excerpt of their conversation:

9    Target Cell Phone 1: Check in for this hotel is at 4pm. So it would be after that

10   Target Cell Phone 1: You still gotta wrap it

11   Target Cell Phone 1: Do overnight next day

12   Target Cell Phone 1: It'll land the same time

13   Target Cell Phone 1: I got another spot we can meet too

14   Target Cell Phone 1: A little earlier

15   Target Cell Phone 1: Like right when you land

16   Target Cell Phone 1: Wait one or eleven???

17   UCA: Aigh. Im have box ready 2 go. ? Where da nearest p o from hotel? I may be able look up tines

18   ut close

19   Target Cell Phone 1: What time you fly out?

20   Target Cell Phone 1: Do you land at 11am?

21   UCA: Taking early flight n layover. Thought it was 1. But its 11 give ir take. Got times mixed up

22   Target Cell Phone 1: It's one on the same street. A block down

23   UCA: Coo

24       32.    On August 27, 2023, SESSOMS sent text messages from Target Cell Phone 1 to the UCA

25   regarding their upcoming, August 28 drug transaction.  Below is an excerpt of their conversation:

26   Target Cell Phone 1: We can meet between 12:30-1pm so you can get it to the p. Office by 1:45

27   UCA: But frfr I ain't tryin to go up in a hotel room wit a nigga I don't know. All respsects n shit. Id

28   be down for doin a drop somewhere

AFFIDAVIT

1    Target Cell Phone 1: A drop puts us in the open

2    Target Cell Phone 1: We can do the drop on the floor of the hotel

3    Target Cell Phone 1: Therefore nobody can say they saw us together

4    UCA: Aigh. Place u trust? Is it close to where ima b at wit the airbnbs

5    Target Cell Phone 1: He'll yeah I trust

6    Target Cell Phone 1: It's downtown

7    UCA: Aigh

8    Target Cell Phone 1: You're my guest

9    Target Cell Phone 1: Well guarded!!!

10   Target Cell Phone 1: I take safety seriously

11   UCA: My man. No doubt

12   UCA: Might jus b easier to stay there then?

13   Target Cell Phone 1: It's better to meet at

14   Target Cell Phone 1: Multiple entrances and exits

15   Target Cell Phone 1: Don't worry, I got all planned out

16   Target Cell Phone 1: 2 spots really

17        33.    Based on my background, training, experience, conversations with other law enforcement,

18   and knowledge of this investigation, I understood SESSOMS to be explaining to the UCA how to

19   conduct their drug transaction in a way that would help avoid detection by law enforcement.

20        34.    On August 28, 2023, SESSOMS texted the UCA from Target Cell Phone 2 and indicated

21   the two would be communicating on Target Cell Phone 2 instead of Target Cell Phone 1.  Below is an

22   excerpt of their exchange:

23   Target Cell Phone 2: This our line bro. Glad you had a safe flight!!! You can meet me later today

24        about 1pm

25   UCA: Wha up my G. Jus touched down

26   Target Cell Phone 2: Hell yeah

27   Target Cell Phone 2: I have some stuff to handle and by 12:30 we can meet

28   Target Cell Phone 2: Go downtown and eat someplace

1   Target Cell Phone 2: Go to K street. 9th n K. The whole block is food

2   Target Cell Phone 2: either direction

3   Target Cell Phone 2: Its's a safe zone. No gangs or nothing like that

4        35.    On August 28, 2023, around 12:40 pm, SESSOMS' Vehicle was observed by law

5   enforcement parked in front of SESSOMS' Office, at 901 H Street.  At approximately 12:45 pm,

6   SESSOMS sent a text message to the UCA using Target Cell Phone 2, instructing the UCA that the drug

7   transaction would take place at 500 J Street – which is the Kimpton Sawyer Hotel, in downtown

8   Sacramento.

9        36.    Agents then arrived at the Kimpton Sawyer hotel and found SESSOMS waiting on the

10  second-floor balcony, overlooking the entrance of the hotel.  Law enforcement noticed another male

11  loitering in the lobby who appeared to be a lookout for SESSOMS, subsequently identified as Co-

12  Conspirator 1.

13        37.    Around 1:22 p.m., the UCA entered the hotel lobby and made contact with SESSOMS.

14  After returning to the UCA's car to get the negotiated cash, the UCA returned to the hotel and went to a

15  third-floor bathroom with SESSOMS.

16        38.    When they entered the bathroom, the UCA observed a Hispanic male dressed in khaki

17  pants and blue polo, with a radio in his pocket.  SESSOMS directed the UCA to place the money on the

18  toilet in a stall and indicated the fentanyl was located on the toilet in the adjacent stall.  SESSOMS told

19  the UCA during this transaction that SESSOMS uses the Kimpton Sawyer Hotel to conduct drug deals

20  because the third floor does not have security cameras, and before the UCA left, that the two would have

21  future drug deals.

22        39.    Surveillance observed SESSOMS following the UCA out of the hotel while on the phone

23  and with a bag in hand.  SESSOMS continued walking back toward SESSOMS' Office (at 901 H Street),

24  and a few minutes later, agents observed SESSOMS at his car, talking to Co-Conspirator 1 – the same

25  male observed in the hotel lobby.  Law enforcement also observed that SESSOMS took off the shirt he

26  was wearing and changed into a new shirt, before getting into SESSOMS' Vehicle.

27        40.    Based on my background, training, experience, conversations with other law enforcement

28  officers, and my knowledge of this investigation, I believe SESSOMS was acting in a way he believed

AFFIDAVIT

1   would help avoid law enforcement detection when he arranged to sell, then sold the fentanyl to the UCA.

2   First, SESSOMS waited to provide the time and location of the drug deal.  SESSOMS also parked his

3   vehicle and walked to the location, instead of parking in the hotel's underground parking lot.  Then,

4   SESSOMS used two other men to help him conduct the drug deal – one as a lookout in the lobby, and the

5   other in bathroom with what appeared to be a communication device.  SESSOMS asked the UCA to go to

6   a place SESSOMS' claimed to know there were no cameras and bragged about conducting drug deals

7   there for this reason.  Then, SESSOMS walked to another location and changed his shirt.  Taken together,

8   I believe SESSOMS thought these behaviors would help conceal his drug trafficking activity and avoid

9   law enforcement detection.

10          41.     Around 2:40 p.m., I examined the suspected fentanyl the UCA had purchased.  I observed

11  two zip lock bags containing white chunky powder individually wrapped in clear baggies.  The total

12  weight of both Ziplock bags was 522 grams.  The powder was field tested, and it tested positive for

13  fentanyl.

14                      **IV.     <u>CONCLUSION</u>**

15          42.     Based on the foregoing, there is probable cause to believe that Tio SESSOMS distributed

16  fentanyl, in violation of 21 U.S.C. § 841(a)(1), on or about August 28, 2023.  I respectfully request that a

17  criminal complaint be issued against the defendant for the crime detailed above, and based upon this

18  criminal complaint, an arrest warrant be issued for this defendant.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

AFFIDAVIT

## V.  SEALING REQUEST

43.  This Affidavit describes the investigation of the drug trafficking activities of Tio SESSOMS.  The target named in this complaint is out of custody.  The United States believes that public disclosure of either the criminal complaint or this Affidavit will cause the target to flee or to take other actions to conceal his location prior to his arrest.  The target might also obstruct justice by instructing others to destroy evidence or to lie to law enforcement officers.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Respectfully submitted,

/s/ Aaron Parker

Aaron Parker
Postal Inspector
U.S. Postal Inspection Service

Subscribed and sworn to before me
telephonically on September __14__, 2023

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

Approved as to form by AUSA ALEXS KLEIN

AFFIDAVIT

**United States v. Tio Sessoms**
**Penalties for Criminal Complaint**

**DEFENDANT**

**Tio SESSOMS**


**COUNT ONE:**

VIOLATION:        21 U.S.C. § 841(a)(1) – Distribution of at least 400 grams of a mixture and
                  substance containing a detectable amount of N-phenyl-N-[1-(2-
                  phenylethyl)-4-piperidinyl] propanamide, popularly known as "fentanyl,"
                  a Schedule II controlled substance;

PENALTIES:        Mandatory minimum of 10 years in prison and a maximum of up to life in
                  prison; or
                  Fine of up to $10,000,000; or both fine and imprisonment
                  Supervised release of at least 5 years up to life

SPECIAL ASSESSMENT: $100 (mandatory on each count)


**FORFEITURE ALLEGATION:**

VIOLATION:        21 U.S.C. § 853(a) - Criminal Forfeiture

PENALTIES:        As stated in the charging document